941 P.2d 218

Carlos MARTINEZ, Plaintiff/Appellant,

v.

**WOODMAR IV CONDOMINIUMS HOMEOWNERS ASSOCIATION, INC., an Arizona non-profit corporation, Defendant/Appellee.**

No. CV–96–0494–PR.

Supreme Court of Arizona,
En Banc.

June 24, 1997.

Fred J. Pain, Jr., Scottsdale, and John Greg Pain, Scottsdale, for Carlos Martinez.

Goldstein & McGroder, Ltd. by Philip T. Goldstein, Patrick J. McGroder, III, Phoenix, for Woodmar IV Condominiums Homeowners Association, Inc.

Durazzo & Eckel, P.C. by Patric E. Durazzo, Nancy J. Davis, Tucson, The Langerman Law Offices by Amy G. Langerman, Phoenix, for Amicus Curiae Arizona Trial Lawyers Association.

## OPINION

FELDMAN, Justice.

Carlos Martinez (Plaintiff) was shot while running away from a group of youths who had gathered in the parking lot of the Woodmar condominium complex. Plaintiff claims the Woodmar IV Condominium Homeowners Association (Defendant) is liable for failing to prevent the attack. The claim was dismissed by summary judgment and the court of appeals affirmed, holding Defendant had no duty to protect Plaintiff. *Martinez v. Woodmar IV Condominiums Ass'n*, 187 Ariz. 408, 930 P.2d 485 (App.1996). We granted Plaintiff's petition for review because it presents an important issue of tort law and one not previously decided in Arizona.[1] *See* Ariz. R.Civ.P. 21. We have jurisdiction under Ariz. Const. art. VI, § 5(3), and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was attending a graduation party at Defendant's 152–unit condominium complex. Plaintiff was a guest of the tenant of a unit owner. After fifteen minutes at the party, he and two other party-goers returned to the complex's parking lot to check on their cars. One of his friends found a group of local ruffians sitting in and on his car. A discussion ensued. As Plaintiff was running away from the altercation, he was shot in the back. The group scattered and no one has yet been apprehended and charged with the shooting.

From the descriptions given by Plaintiff and his friends, the live-in security officer for the complex recognized the group as a gang of young people from a neighboring complex that often would gather in the parking lot to sell drugs and participate in other unsavory activities. Usually, the security guard would disperse them when he saw them. However, because of budget constraints, Defendant employed only one guard, who patrolled the complex for eight hours a day—usually between eight or nine in the evening and five or six in the morning. The shooting occurred about an hour before the guard came on duty.

Plaintiff brought a damage action against Defendant, claiming it retained control of the parking lot and arguing that had Defendant hired a second guard for an earlier shift, the group would have been sent on its way before the altercation could have occurred. The trial court found no duty and granted Defendant's motion for summary judgment, which the court of appeals affirmed.

## DISCUSSION

### A. Characterization of duty

Apparently, the court of appeals saw this case as one of a landlord's duty to protect Plaintiff from the tortious acts of a third party—the gang. The court found Plaintiff was only a social guest and therefore to be treated as a licensee. The court concluded Plaintiff could not recover under the rubric of the RESTATEMENT (SECOND) OF TORTS[2] § 315 (1965), which says there is

> no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third

---

**1.** Plaintiff asked this court to abolish distinctions inherent in the traditional triumvirate of trespasser, invitee, and licensee and follow California's lead in *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). On these particular facts, however, preservation of the traditional distinctions between entrants to the land

is irrelevant and we see no reason to address this issue.

**2.** Throughout this opinion, the RESTATEMENT (SECOND) OF TORTS will be referred to as RESTATEMENT.

person's conduct, or (b) a special relation exists between the [defendant] and the [plaintiff] which gives to the [plaintiff] a right of protection.

*Martinez*, 187 Ariz. at 409, 930 P.2d at 486, *citing* RESTATEMENT § 315. The court then held, "Woodmar did not assume a duty to protect plaintiff, create or encourage his contact with the group in the parking lot, or act in any other way so as to justify imposing on Woodmar a duty to protect plaintiff...." *Id.* at 410, 930 P.2d at 487.

■ We believe the court of appeals improperly characterized the case. Because no special relation of the type contemplated by RESTATEMENT § 315 existed between Plaintiff and Defendant or Defendant and the shooter, Defendant had no § 315 responsibility to control the shooter. This does not, however, free Defendant from liability for breach of any duty it might have had as the owner or possessor of land. That duty would exist because of Defendant's status with respect to the land and consequent power to prevent harm by exercising control over its property. We agree with the court of appeals' conclusion that Defendant had no § 315 responsibility or duty to control the shooter but do not believe Defendant was without a duty to use care to control its property.

## B. Defendant's duty as possessor of common areas used by its owners and their guests

■ We focus on Defendant's status with relation to the land rather than the presence or absence of a special relationship between it and the tortfeasor or Plaintiff. We are concerned only with the question of whether Defendant, occupying a status similar to that of a landlord, had a duty of reasonable care to maintain the safety of its common areas because it had control over the land. In *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n*, we cited *Frances T. v. Village*

*Green Owners Ass'n*, 42 Cal.3d 490, 229 Cal. Rptr. 456, 723 P.2d 573 (1986), for the proposition that in response to changed social conditions, courts may recognize a landowner's duty of reasonable care to protect against another's foreseeable criminal acts. 177 Ariz. 256, 261, 866 P.2d 1342, 1347 (1994). In *Frances T.*, the California court found a condominium association[3] could be held liable as a landlord when it had actual knowledge of inadequate lighting and the hazardous condition it created, yet failed to remedy the condition that led to the plaintiff's rape and robbery. In the present case, the court of appeals noted *Frances T.* and stated: "Assuming without deciding that Woodmar acted like a landlord in controlling the complex common areas, it might have had some duty to protect an owner of a condominium unit or the owner's tenant." *Martinez*, 187 Ariz. at 409, 930 P.2d at 486. However, the court distinguished between a condominium owner and a social guest/licensee, holding any duty owed to a unit owner would not extend to Plaintiff. *Id.*

We believe this distinction is contrary to existing law when, as in this case, the danger causing the injury is located on property in the exclusive control of the landlord or condominium association. In Arizona, if there is no statute or case law on a particular subject, we have traditionally followed the Restatement of Laws. RESTATEMENT § 360 states:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee *and others lawfully upon the land with the consent of the lessee or a sublessee* for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreason-

---

**3.** Arizona statutes define condominiums and condominium associations under A.R.S. § 33–1201 *et seq.*:

"Condominium" means real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of the separate portions.

A.R.S. § 33–1202(10).

The membership of the association at all times shall consist exclusively of all the unit owners.... The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

A.R.S. § 33–1241.

able risk involved therein and could have made the condition safe.

(Emphasis added.) RESTATEMENT (SECOND) OF PROPERTY § 17.3 contains an almost identical provision.[4] With respect to common areas, § 360 was followed in *Dolezal v. Carbrey*, 161 Ariz. 365, 778 P.2d 1261 (App.1989) (landlord's duty of care extended to social guests of tenant). As was noted by PROSSER & KEETON, landlord liability extends to areas where "the landlord has retained control over that aspect of the premises responsible for the injury." W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 63, at 442 (5th ed.1984).

We note Defendant in this case is not a lessor but a new type of possessor—a condominium association that has retained in its control common areas, such as the parking lot, that unit owners are entitled to use as appurtenant to their unit. We couple this with the introduction to Part Six of the RESTATEMENT (SECOND) OF PROPERTY, which addresses the tort liability of landlords, stating: "In condominiums, the tort problem is the same as in any other case of the tort liability of the possessor of land to others."

The element of control, we believe, is essential to a finding of duty for the condominium association. Like a landlord who maintains control and liability for conditions in common areas, the condominium association controls all aspects of maintenance and security for the common areas and, most likely, forbids individual unit owners from taking on these chores. Thus, if the association owes no duty of care over the common areas of the property, no one does because no one else possesses the ability to cure defects in the common area. We do not believe the law recognizes such a lack of responsibility for safety. We therefore hold that with respect to common areas under its exclusive control, a condominium association has the same duties as a landlord. *Frances T.*, 229 Cal. Rptr. at 461, 723 P.2d at 578.

Thus, if we apply the rules of RESTATEMENT § 360 and RESTATEMENT (SECOND) OF PROPERTY § 17.3, a condominium association has a duty not only to the unit owners and their tenants but also to those who are on the land with their consent and who will inevitably be expected to use common areas such as the parking lot. *See* RESTATEMENT § 360 cmt. d (the rule stated in § 360 applies to all common areas the lessee is expected to use, such as the yard). On this point, we believe the case law is quite clear and supports the Restatement view. Traditionally—PROSSER & KEETON cites cases as early as 1880, *e.g.*, *Looney v. McLean*, 129 Mass. 33 (1880)— common areas were considered under the control of the landlord, although open and necessary for use by tenants. This element of control creates an "affirmative obligation to exercise reasonable care to inspect and repair such parts of the premises for the protection of the lessee; and the duty extends also to members of the tenant's family, his employees, his invitees, his guests, and others on the land in the right of the tenant ...." PROSSER & KEETON § 63, at 440.[5] This, of course, is the duty enumerated in RESTATEMENT § 360. We hold that Defendant's duty with respect to the common areas, like that of a landlord, extends not only to the unit owners but also to those on the land with consent of the owners and their tenants.[6]

---

**4.** § 17.3. Parts of Leased Property Retained in Landlord's Control Which Tenant is Entitled to Use

A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have:

(1) discovered the condition and the unreasonable risk involved therein; and

(2) made the condition safe.

**5.** In *Piccola v. Woodall*, 186 Ariz. 307, 921 P.2d 710 (App.1996), the court of appeals apparently recognized the principle that a landlord owed a duty of care to its tenant's social guest, although it found no breach of duty. *See also Dolezal*, 161 Ariz. 365, 778 P.2d 1261.

**6.** No other rule, we believe, makes sense. Suppose, for example, that a unit owner and his visiting brother were in the complex elevator and were injured when it malfunctioned because of the association's negligence in repair or maintenance. It would be a strange rule that would

## C. Duty with respect to the type of activity on the land

The duty to maintain the safety of common areas applies not only to physical conditions on the land but, we believe, also to dangerous activities on the land. *See* RESTATEMENT § 344;[7] RESTATEMENT (SECOND) OF PROPERTY § 17.3. Thus, the condominium association, like a landlord and certain other land possessors, has a duty to maintain the common areas it controls in a safe condition and protect both owners and their guests from dangerous conditions or activities.

[3] The court of appeals noted the Restatement rule but stated that "given plaintiff's legal status [as a licensee], Woodmar only owed a duty to 'refrain from knowingly letting him run upon a hidden peril or wantonly or wilfully causing him harm.'" *Martinez*, 187 Ariz. at 410, 930 P.2d at 487. The court found the gang hanging out in the parking lot was not a hidden danger, stating the "transient harm created by third persons who commit crimes" is distinguishable from a dangerous physical condition that a landowner must make safe. *Id.* at 410, 930 P.2d at 487. Again, we disagree. *See Robertson v. Sixpence Inns*, 163 Ariz. 539, 544, 789 P.2d 1040,1045 (1990) (land possessor's duty encompasses reasonable care to protect from or warn of danger of criminal attacks); RESTATEMENT § 344. The duty to those using the common areas with consent of the association, its unit owners, and their tenants, includes the use of reasonable care to prevent harm from criminal intrusion. *See* RESTATEMENT (SECOND) OF PROPERTY § 17.3 cmt. 1:

l. *Criminal Intrusion.* For the purpose of this section, the unreasonable risk of harm from criminal intrusion constitutes a dangerous condition, so that where the landlord could by the exercise of reasonable care have discovered the unreasonable risk of criminal intrusion and could have made the condition safe from such unreasonable risk of criminal intrusion, he is subject to liability for physical harm caused by criminal intrusion if he had not taken the necessary precautions. As regards parts of the property retained the landlord's control, common entranceways, fire escapes, halls and other approaches to the leased property are included.

It is well recognized at present that failure to provide adequate lighting, door locks, or other security measures may subject certain landowners to liability for harm caused by a criminal attack on persons to whom the owner owes a duty of care.

L leases an apartment to T in an area of increasing crime, providing secure common areas at the time of the lease. Subsequently L stops providing constant doorman service, constant desk attendants, and frequently leaves an entrance to the building unlocked at night. A criminal intruder assaults and robs T. L knows of the unreasonable risk and has failed to exercise reasonable care in making the common areas reasonably safe. L is subject to liability to T.

RESTATEMENT (SECOND) OF PROPERTY § 17.3, illus. 18.

Logically, it cannot be otherwise. If one owes a duty of reasonable care to those on

---

allow the injured unit owner to recover for his injuries while the brother, a guest equally expected and invited to use the elevator, could not. It would be possible, of course, to argue that the guest would recover if the defect were hidden but not if it were obvious. Could the association then escape responsibility simply by posting a sign stating "caution, elevator may malfunction"? We refuse to embrace such arcane and illogical distinctions. With respect to the common areas, the possessor—landlord or association—invites all tenants, owners and their guests, as users. *See* RESTATEMENT § 343.

7. We note that RESTATEMENT § 344 applies in this case. Condominium developments are businesses that could not be operated without common areas open to unit owners, their tenants, and their guests. Thus:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

RESTATEMENT § 344.

one's land with permission, then the circumstances will dictate what is reasonable to protect others from foreseeable and preventable danger. The category of danger neither creates nor eradicates duty; it only indicates what conduct may be reasonable to fulfill the duty. As PROSSER & KEETON acknowledges, since 1970 courts have recognized the landlord's duty of care may include measures to protect others from criminal attacks, provided the attacks are reasonably foreseeable and preventable. PROSSER & KEETON § 63, at 442–43 (citing *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 439 F.2d 477 (D.C.Cir.1970) (owner of urban multiple-unit apartment dwelling had duty of reasonable care to protect tenants from foreseeable criminal assaults)); *see also Robertson*, 163 Ariz. at 544, 789 P.2d at 1045 (duty to independent contractor foreseeably attacked by criminal); *Rosenbaum v. Security Pacific Corp.*, 43 Cal.App.4th 1084, 50 Cal.Rptr.2d 917 (1996); *Frances T.*, 229 Cal.Rptr. at 475–76, 723 P.2d at 593; *Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 864 P.2d 796, 798 (1993); *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644, 653 (Tex. 1993).

Our case is the type in which courts are tempted to blur the concepts of duty and negligence. As we have previously indicated, we disapprove of attempts to equate the concepts of duty with specific details of conduct. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985). Duty is an issue "of the relation between individuals which imposes upon one a legal obligation for the benefit of the other...." *Id.* (quoting *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984)); PROSSER & KEETON § 53, at 356. As the possessor of the common areas, Defendant had a relationship, similar to that of a landlord, with unit owners, their tenants, and persons on the land with consent and permission to use the common areas. That relationship required Defendant to use reasonable care to avoid causing the injury to those it permitted to use the property under its control. *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367 (citing RESTATEMENT § 343 and quoting PROSSER & KEETON § 61, at 419). The relationship between Defendant, its unit owners, and persons given permission to enter the common areas thus imposed an obligation on Defendant to take reasonable precautions for the latter's safety. The type of foreseeable danger did not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty. The true issue on summary judgment in this case, therefore, was not the question of duty but rather the question of negligence. We turn, then, to the specific facts to determine whether the trial judge correctly granted summary judgment.

## D. Propriety of summary judgment

■ The trial judge should grant summary judgment if the facts supporting the negligence claim or defense "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Foreseeability of harm defines and limits the scope of conduct necessary to fulfill a land possessor's duty and is the cornerstone of the cases involving a possessor's duty to act reasonably to protect tenants and their guests from criminal attacks. *Frances T.*, 229 Cal.Rptr. at 475–76, 723 P.2d at 593. If the possibility of some injury from Defendant's acts or omissions was not foreseeable, Defendant was not negligent, and the trial judge properly granted summary judgment.

■ When reviewing a decision to grant summary judgment, we review the facts in the light most favorable to the non-movant. *Id.* In the instant case, we look at whether sufficient evidence of foreseeability and possible prevention was presented to create a genuine issue of material fact. In the response to the motion for summary judgment, there is evidence presented that Defendant knew of the incursion by gangs in the parking lot and other common areas of its property, knew the gangs engaged in drug dealing and other criminal activity, was warned by its own security guard of the need for 24–hour patrols, had hired a second guard for a short period but terminated him because of expense considerations, and knew a neighboring condominium complex had hired off-

212

duty Phoenix police officers to patrol. We therefore hold there is sufficient evidence from which a jury could find the danger foreseeable and Defendant negligent.

On this record, also, we cannot say as a matter of law Defendant could not have taken reasonable measures that probably would have prevented the attack. It may be that increased security patrols, better fencing, calls for police control, or other measures might have prevented injury. This question of causation in fact is, of course, one especially for the jury. *Petefish v. Dawe,* 137 Ariz. 593, 599, 672 P.2d 937, 943 (App.1982) ("[C]ausation in fact is a question of fact for the jury in all but rare instances.").

## CONCLUSION

The trial court and court of appeals erred in not recognizing the duty flowing from the relationship between Defendant, the unit owners, their tenants, and those using the common areas with permission. Although Defendant did not owe Plaintiff a duty of care based on Defendant's special relationship to control the attacker in this case, with respect to the common areas under its control it had a duty like that of a landlord to maintain its property in a reasonably safe condition. This included the duty to take reasonable measures to protect against foreseeable activities creating danger, including criminal attacks, on the land it controlled.

The record in this case provides sufficient evidence from which a jury could find negligence and causation. Accordingly, summary judgment was improper. Therefore, we vacate the court of appeals' opinion, reverse the trial court's grant of summary judgment, and remand to the trial court for proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.