NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LAWRENCE PEREZ, *Plaintiff/Appellant*,

*v.*

KYLE PATTERSON, *Defendant/Appellee*.

No. 1 CA-CV 24-0214

FILED 12-05-2024

---

Appeal from the Superior Court in Apache County
No. S0100CV202200117
The Honorable Michael D. Latham, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Robert M. Gregory, P.C., Gilbert
By Robert M. Gregory
*Counsel for Plaintiff/Appellant*

Wright Welker & Pauole PLC, Phoenix
By Christopher S. Welker & Richard R. Carpenter
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Jennifer B. Campell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Lawrence Perez appeals from the superior court's order dismissing his negligence claim against Kyle Patterson. We affirm because Patterson did not owe a duty to Perez and, as a public official, Patterson has qualified immunity from ordinary negligence claims.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In August 2021, Perez attended a St. Johns High School football game. As he walked toward the stadium bleachers, he tried to step over a water puddle on the walkway but lost his balance and fell. He tore his left rotator cuff, which led to shoulder replacement surgery in January 2022.

¶3        Perez filed a complaint against the St. Johns Unified School District ("District") and Kyle Patterson, the District's Superintendent. Perez alleged a negligence claim against the defendants, claiming they caused his injuries because they "had a duty to keep [the school's] premises safe and free from any unreasonably hazardous and/or dangerous conditions."

¶4        The District moved to dismiss the complaint, noting Perez failed to serve each governing board member. The superior court granted the motion and dismissed the complaint with prejudice, finding Perez served only Patterson and thus violated the notice of claim statute. *See* A.R.S. § 12-821.01.

¶5        Perez appealed the order dismissing the complaint. He argued that the court dismissed the complaint against Patterson *sua sponte* because the District did not include Patterson in its motion to dismiss. *Perez v. St. Johns Unified Sch. Dist.*, 1 CA-CV 23-0079, 2023 WL 7138497, at *3, ¶ 17 (Ariz. App. Oct. 31, 2023) (as amended) (mem. decision). We affirmed the superior court's dismissal against the District. *Id.* at *4, ¶ 22. Still, we vacated and remanded the dismissal against Patterson because the court failed to take the necessary procedural steps, such as allowing Perez to be heard on Patterson's dismissal. *Id.* at *3, *4, ¶¶ 18, 22.

¶6          On remand, Patterson moved to dismiss the complaint for failure to state a claim upon which relief could be granted. *See* Ariz. R. Civ. P. 12(b)(6). Patterson argued that he did not have a duty to Perez because (1) only the District, as the possessor of the land, had a duty to use reasonable care to make the premises safe for invitees; (2) Arizona does not recognize a special relationship creating a duty between a school superintendent and invitees on school premises; and (3) public policy does not compel the creation of such a duty. Perez responded that Patterson had a duty to invitees on school grounds under the District's Policy Manual ("Manual").

¶7          In March 2024, the superior court granted Patterson's dismissal motion, finding that the District, as the land possessor, had the duty to make the premises safe instead of Patterson, a District employee. The court also found that public policy disfavored finding Patterson negligent in his duties as superintendent and holding him personally liable because making such a determination would allow any political subdivision's employee to be personally sued for the condition of the land, even if the employee's conduct were not tortious.

¶8          Perez appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).

## DISCUSSION

¶9          Perez contends that public policy supports personal suits against political subdivision employees. Perez also argues that the superior court erred by dismissing his complaint against Patterson because Patterson had a duty to him as a land possessor and because public policy favors protecting invitees from risks of harm.

¶10          We review the superior court's dismissal of a complaint for failure to state a claim *de novo. Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶¶ 7-8 (2012). We affirm a dismissal if the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* at 356, ¶ 8 (quotation omitted); *see also* Ariz. R. Civ. P. 12(b)(6). We look at the complaint and "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Coleman*, 230 Ariz. at 356, ¶ 9. On *de novo* review, we may affirm the superior court if it was legally "correct for any reason." *See Fappani v. Bratton*, 243 Ariz. 306, 309, ¶ 8 (App. 2017).

3

**A.      The Court Did Not Err Because Patterson Did Not Have a Duty to Perez Through a Special Relationship or As a Matter of Public Policy.**

**¶11**          A plaintiff must prove four elements to prevail on an ordinary negligence claim: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). Whether a duty exists is a question of law that we review *de novo*. *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015).

**¶12**          "A duty is an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Acri v. State*, 242 Ariz. 235, 238, ¶ 7 (App. 2017) (quotation omitted). To prevail on his premises liability claim, Perez must prove that Patterson owed him a duty to maintain the school football grounds in a reasonably safe condition. *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267, ¶ 9 (2021). This duty may arise from a special relationship between the parties, such as a landowner-invitee relationship or public policy. *Gipson*, 214 Ariz. at 144-45, ¶¶ 18-19, 23.

**¶13**          Perez argues that Patterson had a duty because Patterson, not the District, possessed the land by exercising actual and physical control over it. Perez bases his claim on the Manual, asserting it created land management duties for the superintendent. Perez also argues that the Manual established a public policy duty.

**¶14**          Land possessors have a special relationship with invitees, *see Gipson*, 214 Ariz. at 145, ¶ 19, and are "under an affirmative duty" to use reasonable care to make the premises safe. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 355-56 (1985) (quoting *Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519 (1982)). A public invitee is "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." *Tostado v. City of Lake Havasu*, 220 Ariz. 195, 202, ¶ 30 (App. 2008) (quoting Restatement (Second) of Torts § 332(2) (1965)).

**¶15**          Arizona recognizes that school districts must make their premises reasonably safe for invitees. *See, e.g.*, *Jesik v. Maricopa County Cmty. Coll. Dist.*, 125 Ariz. 543, 546 (1980); *Vreeland v. State Bd. of Regents*, 9 Ariz. App. 61, 62 (1969); *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 374, ¶¶ 17-18 (2021) (School districts owe a duty to students for "risks . . . that occur while the student is at school or otherwise under the school's control.") (quoting

*Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 157-58, ¶ 6, n.2 (App. 2014)). Perez was an invitee under the District's control during the football game. Thus, the District, as the land possessor, had a special relationship with Perez and had a duty to keep school premises reasonably safe for his use.

**¶16**         While exercising actual, physical control over land can evidence possession, *see Dabush*, 250 Ariz. at 269, ¶ 18, Perez only cites the Manual to support his argument that Patterson had actual, physical control. A person with actual and physical control over the premises "must have the authority to (1) exclude others from the premises; and (2) direct how the premises is repaired, maintained, and used." *See Dabush*, 250 Ariz. at 269, ¶ 18; *see also Jackson v. Cartwright Sch. Dist.*, 125 Ariz. 98, 102-03 (App. 1980) (The school district possessed the premises because it locked the entry gates and approved land alteration requests.); *State v. City of Kingman*, 217 Ariz. 485, 488-90, ¶¶ 13, 22 (App. 2008) (The city did not have actual control over the highway intersection because it did not "actually participate in maintaining or operating" the intersection.).

**¶17**         While the Manual granted Patterson some authority over the use of school grounds, Patterson did not have a duty to Perez because the District's duty to invitees is nondelegable. A land possessor holds "an affirmative duty to protect those described as his invitees by making and keeping the premises safe," which requires "a higher degree of care." *See Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101 (1990). When a nondelegable duty exists, "the employer must retain responsibility, despite proper delegation to another" because allowing the possessor to "escape liability" by delegating its duty would undermine the duty itself. *See id.* at 101, 104.

**¶18**         When a nondelegable duty exists, "the principal is 'held liable for the negligence of [its] agent, whether [its] agent was an employee, or an independent contractor.'" *Wiggs v. City of Phoenix*, 198 Ariz. 367, 370, ¶ 10 (2000) (quoting *Maloney v. Rath*, 69 Cal. 2d 442, 446 (1968)). *Ft. Lowell* extended the nondelegable duty doctrine to a land possessor who delegated its duties to an independent contractor. 166 Ariz. at 98, 103-04. Because the District retained possession of the school grounds at the time of Perez's injury, *Ft. Lowell*'s rationale that land possessors, or employers, with a special duty to invitees, should not be able to "escape liability merely by delegating performance to another" applies here. *Id.* at 101. While the Manual delegates the performance of the District's duty to Patterson by granting him responsibility over "the use of buildings and grounds" and requiring him to establish procedures to protect the safety of all students

and visitors, those responsibilities do not change the nature of the District's nondelegable duty to invitees. *See id.* at 104.

¶19 Perez contends that the District's land ownership is "questionable." He argues that the District's land ownership is unknown because the land is designated as trust land under the Arizona State Land Department's control. Even if the District does not own the land, our analysis does not change because "[w]hen land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession." Restatement (Second) of Torts § 356 cmt. a (1965); *see also Klimkowski v. De La Torre*, 175 Ariz. 340, 342 (App. 1993). Thus, the District is liable as the land possessor, whether it owned or was leasing the land for the football stadium. And because the District's duty is nondelegable, Perez's claims against Patterson fail.

¶20 Perez also argues public policy supports imposing a duty of care on Patterson because those "who exercise control over property . . . have the means and responsibility to protect the public from harm." We reject the argument because Perez has not shown that Patterson's alleged public policy duty is rooted in a statute, regulation, or common law.

¶21 For a duty to exist under public policy, such a duty must be established by a statute, regulation, or a common law rule. *See Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 566-67, ¶¶ 18-20 (2018); *see, e.g., Brannigan v. Raybuck*, 136 Ariz. 513, 516-17 (1983) (Liquor licensees have a duty under statutes prohibiting underage drinking not to sell alcohol to minors.); *Thomas v. Baker Fam. Tr.*, 191 Ariz. 187, 188 (App. 1997) (A local ordinance may impose a duty on a property owner to repair a sidewalk next to his property.); *Martinez v. Woodmar IV Condo. Homeowners Ass'n, Inc.*, 189 Ariz. 206, 209 (1997) (A condominium association has a duty to owners, tenants, and invitees in the common areas as established by common law.).

¶22 Perez points to A.R.S. § 15-503, which enables a district's governing board to hire a superintendent responsible for the school system's administration, and points to the Arizona Administrative Code R7-2-603(J)(3), which discusses resource management. But A.R.S. § 15-503 does not create a public policy duty because it only permits the governing board to hire a superintendent. And Section R7-2-603(J)(3) of the Administrative Code, which discusses educational leaders' management of resources to promote academic success, does not establish a duty. *See* Ariz. Admin. Code R7-2-603(J)(3); s*ee also Hogue v. City of Phoenix*, 240 Ariz. 277,

282, ¶ 18 (App. 2016) (Phoenix City Code articulating general employee responsibilities does not impose a duty.).

¶23        Without a statutory basis, "we exercise great restraint in declaring public policy." *See Quiroz*, 243 Ariz. at 566-67, ¶ 19. While the Manual outlines certain job responsibilities of a superintendent relating to safety procedures and the use of school grounds, these responsibilities do not establish a public policy duty. *See Hogue*, 240 Ariz. at 282, ¶ 18. In sum, Patterson did not have a duty to Perez because the District's duty to Perez as the land possessor is nondelegable, and a public policy duty does not exist under statute, regulation, or common law.

**B.        Even if Patterson Owed a Duty to Perez, He Has Qualified Immunity for the Discretionary Acts Performed in His Capacity as Superintendent.**

¶24        Perez contends that he can sue Patterson personally for alleged tortious conduct while acting as superintendent. But qualified immunity precludes personal suits against Patterson for negligent conduct exercised within the scope of his role as superintendent.

¶25        Patterson did not plead qualified immunity in his motion to dismiss or in a responsive pleading. *See* Ariz. R. Civ. P. 8(d); *see also Chamberlain v. Mathis*, 151 Ariz. 551, 554 (1986). Generally, failure to plead an affirmative defense at the superior court leads to waiver, *City of Phoenix v. Linsenmeyer*, 86 Ariz. 328, 333 (1959), but waiver is discretionary. *See Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 8 (App. 2006). In our discretion, we do not remand to allow Patterson to plead qualified immunity because qualified immunity is a question of law that we review *de novo*, *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011), and we can resolve it on the record before us. *See Graves v. City of Coeur D'Alene*, 339 F.3d 828, 845, n.23 (9th Cir. 2003).

¶26        While we narrowly apply immunity because it is the exception, not the rule, *Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392 (1963), Arizona law supports qualified immunity for the discretionary decisions made by a school district superintendent in the scope of his job responsibilities. Qualified immunity protects public officials from suits arising from acts done within the scope of their job functions that "inherently require[] judgment or discretion." *Spooner v. City of Phoenix*, 246 Ariz. 119, 123-24, ¶ 9 (App. 2018) (quoting *Chamberlain*, 151 Ariz. at 555). The purpose of providing immunity is to "preserv[e] independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Id.* at 123-24, ¶ 9 (quoting Restatement (Second) of

Torts § 895D cmt. b (1979)). Qualified immunity shields public officials from simple negligence claims but not gross negligence claims.[1] *See* A.R.S. § 12-820.02(A); *see also Jennings v. Agne*, 254 Ariz. 174, 178, ¶ 15 (App. 2022). Perez did not allege gross negligence, so qualified immunity applies here.

**¶27**        Assuming Patterson had a duty to Perez, Patterson had qualified immunity for his discretionary acts as the District's superintendent. The legislature prescribed specific areas of immunity in A.R.S. § 12-820.02 but also specified that its grant of statutory immunity must not be construed to "affect, alter or otherwise modify any other rules of tort immunity regarding . . . public officers as developed at common law." A.R.S. § 12-820.05(A). "[W]e follow the Restatement . . . in the absence of Arizona authority to the contrary." *Jesik*, 125 Ariz. at 546. When our supreme court extended qualified immunity to executive government officials in defamation cases, the court relied, in part, on the Restatement (Second) of Torts, *see Chamberlain*, 151 Ariz. at 558, and we rely on the specific section of the Restatement applied to provide qualified immunity to police officers. *See, e.g., Spooner*, 246 Ariz. at 123-24, ¶¶ 9, 11 (The court relied on Restatement § 895D to apply qualified immunity to police officers' investigative duties.); *Jennings*, 254 Ariz. at 178, ¶¶ 15, 17 (Qualified immunity applies to police officers' conduct when responding to an emergency call.). "A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission

---

[1]        "Our supreme court has recognized that the definition of gross negligence 'is, at best, inexact.'" *Noriega v. Town of Miami*, 243 Ariz. 320, 328, ¶ 36 (App. 2017) (quoting *Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, 535, ¶ 20, n.4 (2003)). But the court explained, "[a]s between negligence and gross negligence, negligence suggests 'a failure to measure up to the conduct of a reasonable person.'" *Weatherford*, 206 Ariz. at 535, ¶ 20, n.4 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). "And [g]ross negligence generally signifies more than ordinary inadvertence or inattention, but less perhaps than conscious indifference to the consequences, which falls closer to the recklessness standard that usually involves a conscious disregard of a risk." *Noriega*, 243 Ariz. at 328, ¶ 36 (quotation omitted).

if . . . he is immune because [he] engaged in the exercise of a discretionary function." Restatement (Second) of Torts § 895D(3)(a) (1979).[2]

**¶28**     A superintendent's choice of implementing certain safety measures to protect invitees on school grounds is a discretionary function that "inherently requires judgment or discretion." *See Spooner*, 246 Ariz. at 123-24, ¶ 9 (quoting *Chamberlain*, 151 Ariz. at 555). Examples of discretionary acts include "evaluating reports or employees' performances or deciding upon [a] parole release warrant." *Chamberlain*, 151 Ariz. at 556. The Manual states that the superintendent "assumes responsibility for the use of buildings and school grounds" and safety procedures to protect those on school grounds "or at school-sponsored events." Patterson's decision about what safety procedures to implement to address water accumulation on the football stadium's walkway was within his discretionary authority under the Manual. Thus, this is a discretionary act subject to qualified immunity.

**¶29**     We acknowledge that the doctrine of qualified immunity requires balancing the interests of government officials and injured parties. *See Chamberlain*, 151 Ariz. at 554-55. Immunity for public officials allows them to govern without elevating "personal interest above official duty." *See id.* Without immunity, a superintendent's job responsibilities "may be hampered and qualified individuals may be hesitant to serve" in such positions. *See id.* at 555. Without gross negligence, balancing competing interests favors qualified immunity for superintendents acting within their discretionary job functions. *See Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 267-68 (1977) (Parole board members can be liable "only for [their] grossly negligent or reckless" conduct and are immune "from suit for reasonable decisions.").

---

[2]     Restatement § 895D also provides several factors to consider when determining whether an action is discretionary: (1) the nature and importance of the function performed, (2) how much the court passing judgment on the officer's discretion requires it to interfere with the conduct of the coordinate branches of government, (3) the importance of freely exercised discretion and sensitivity to imposing liability, (4) the likelihood that the officer will be financially responsible, (5) likelihood of harm to the public, (6) the type and severity of harm, and (7) the availability of other remedies to the injured party. Restatement (Second) of Torts § 895D cmt. f (1979).

¶30        Additionally, providing qualified immunity to school district superintendents does not limit injured parties' interests in recovery because even if plaintiffs could sue a superintendent, the school district would be liable for the superintendent's negligence as an agent of the district. *See Ryan v. State*, 134 Ariz. 308, 310 (1982). Under Arizona law

> [a] state officer, agent or employee, except as otherwise provided by statute, *is not personally liable* for an injury or damage resulting from an act or omission in a public official capacity where the act or omission was the result of the exercise of the discretion vested in the officer . . . and if the exercise of the discretion was done in good faith without wanton disregard of statutory duties.

A.R.S. § 41-621(K) (emphasis added). Because "the state is liable for the negligent acts of its agents," *Ryan*, 134 Ariz. at 310, Section 41-621(A) requires the state to obtain insurance to protect from financial loss. Thus, our holding does not hamper the interests of those injured by government officials' discretionary decisions.

¶31        Here, there is no allegation that Patterson engaged in gross negligence. Thus he is entitled to immunity from simple negligence suits even if he owed a duty to Perez. *See* A.R.S. §§ 12-820.02(A), -820.05(A).

## CONCLUSION

¶32        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV